IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA,

      Plaintiff,

v.

TOYOBO CO, LTD. and TOYOBO
AMERICA, INC., et al.,

      Defendants.

CV No. 07-1144 RWR

Judge Richard W. Roberts

**DEFENDANTS TOYOBO COMPANY, LTD. AND TOYOBO AMERICA, INC.'S
REPLY MEMORANDUM IN FURTHER SUPPORT OF THEIR MOTION TO
DISMISS THE COMPLAINT FILED BY THE UNITED STATES**

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................ ii

PRELIMINARY STATEMENT ........................................................................ 1

I.     **THE UNITED STATES MISSTATES THE RELEVANT STANDARDS.** ................................................................................ 2

II.    **THE UNITED STATES FAILS TO SHOW THAT ANY FALSE CLAIM WAS SUBMITTED IN CONNECTION WITH VEST PURCHASES REIMBURSED UNDER THE BULLET PROOF VEST PARTNERSHIP GRANT ACT.** ............................................ 4

III.   **THE UNITED STATES HAS FAILED TO ESTABLISH ANY FALSE CLAIMS ACT LIABILITY AGAINST TOYOBO.** ........................... 7

     A.     The United States Has Failed To Show That Any False Claim Was Submitted To It In Connection With Any Of the Vests At Issue. ............. 7

     B.     The United States' Own Allegations Show That Toyobo Did Not Cause Any False Claim To Be Submitted. ............................................. 10

IV.   **THE UNITED STATES FAILS TO SHOW THAT THE COMPLAINT CONTAINS SUFFICIENT ALLEGATIONS OF A FALSE CLAIMS ACT CONSPIRACY.** ....................................................... 13

V.    **A DEFECTIVE PRODUCT DOES NOT EQUATE TO A FALSE CLAIM.** ...................................................................................................... 16

VI.   **THE UNITED STATES CANNOT ESTABLISH COMMON LAW LIABILITY AGAINST TOYOBO.** .................................................................. 18

     A.     The Complaint Does Not Allege Common Law Fraud. .......................... 18

     B.     The United States Cannot Establish That Toyobo Was Unjustly Enriched ...................................................................................................... 22

     CONCLUSION ................................................................................................. 24

# TABLE OF AUTHORITIES

## CASES

**Page**

*Arbitraje Casa de Cambio, S.A. de C.V. v. United States Postal Svc.*,
  297 F. Supp. 2d 165 (D.D.C. 2003) ...................................................................4

*Bell Atlantic Corp. v. Twombly*, __ U.S.__, 127 S. Ct. 1955 (2007) ...................................... *passim*

*In re Cardizem CD Antitrust Litig.*, 105 F. Supp. 2d 618 (E.D. Mich. 2000) ..............................23

*Chelsea Condominium Unit Owners Assoc. v. 1815 A St. Condominium Group, LLC*,
  468 F. Supp. 2d 136 (D.D.C. 2007) ...............................................................21

*Cooper v. Blue Cross & Blue Shield of Fla., Inc.*, 19 F.3d 562 (11th Cir. 1994)..........................12

*D.R. Ward Constr. Co. v. Rohm & Haas Co.*, 470 F. Supp. 2d 485 (E.D. Pa. 2006)...................23

*Daff v. United States*, 78 F.3d 1566 (Fed. Cir. 1996) ...................................................17

*Daisley v. Riggs Bank, N.A.*, 372 F. Supp. 2d 61 (D.D.C. 2005).....................................20

*Deteresa v. American Broadcasting Cos.*, 121 F.3d 460 (9th Cir. 1997)..............................20, 22

*In re Eashai*, 87 F.3d 1082 (9th Cir. 1996)..............................................................21

*Eastman Kodak Co. v. Wachovia Bank Nat. Ass'n*, No. 02-CV-6441T,
  2007 WL 2406919 (W.D.N.Y. Aug. 21, 2007) .....................................................21

*Elec. Ins. Co. v. Freudenberg-Nok, Gen. P'ship*, 487 F. Supp. 2d 849 (W.D. Ky. 2007)...........7, 8

*In re Ford Motor Co. Ignition Switch Prod. Liab. Litig.*, No. 96-3125,
  2001 WL 1266317 (D. N.J. Sept. 30, 1997) .....................................................21

*In re General Motors Corp. Anti-Lock Brake Prod. Liab. Litig.*,
  966 F. Supp. 1525 (E.D. Mo. 1997).................................................................20

*Gustave-Schmidt v. Chao*, 226 F. Supp. 2d 191 (D.D.C. 2002) ........................................3

*Hoey v. Sony Electronics*, 515 F. Supp. 2d 1099 (N.D. Cal. 2007).................................20

*Independent Bus. Forms, Inc. v. A-M Graphics, Inc.*, 127 F.3d 698 (8th Cir. 1997) ...................21

*Joswick v. Chesapeake Mobile Homes, Inc.*, 747 A.2d 214 (Md. Ct. Spec. App. 2000)................8

*In re K-Dur Antitrust Litig.*, 338 F. Supp. 2d 517 (D.N.J. 2004) ....................................23

*KML Laboratories Ltd. v. Hopper*, 830 F. Supp. 159 (E.D.N.Y. 1993)..................................20, 22

*In re Lorazepam & Clorazepate Antitrust Litig.*, 295 F. Supp. 2d 30 (D.D.C. 2003)............22, 23

*Oceanic Exploration Co. v. ConocoPhillips, Inc.*, No. 04-332,
    2006 WL 2711527 (D.D.C. Sept. 21, 2006) .........................................................22

*Progressive Ins. Co. v. Monaco Coach Corp.*, No. 1:05 CV 37 DMR JMR,
    2006 WL 839520 (S.D. Miss. March 29, 2006) ....................................................7

*Rohrbaugh v. Investment Co., Inst.*, No. 00-1237, 2002 WL 31100821
    (D.D.C. July 2, 2002)..........................................................................................4

*Sanders v. District of Columbia*, 522 F. Supp. 2d 83 (D.D.C. 2007) .................................3

*Transp. Corp. of Am. v. IBM Corp.*, 30 F.3d 953 (8th Cir. 1994) .................................6, 7

*United States ex rel. Amin v. George Washington Univ.*, 26 F. Supp. 2d 162
    (D.D.C. 1998) ....................................................................................................15

*United States ex rel. Anderson v. Northern Telecom, Inc.*, 52 F.3d 810 (9th Cir. 1995).........17, 18

*United States ex rel. Atkinson v. Pennsylvania Shipbuilding Co.*, No. Civ. A. 94-7316,
    2004 WL 1686958 (E.D. Pa. July 28, 2004)........................................................16

*United States ex rel. Camillo v. Ancilla Sys., Inc.*, No. 03-CV-0024-DRH,
    2005 WL 1669833 (S.D. Ill. July 18, 2005) .......................................................11

*United States ex rel. Capella v. Norden Sys., Inc.*, No. 3:94-CV-2063,
    2000 WL 1336487 (D. Conn. Aug. 24, 2000) ....................................................14

*United States ex rel. Clausen v. Lab. Corp. of Am., Inc.*, 290 F.3d 1301 (11th Cir. 2002) ...........12

*United States ex rel. Franklin v. Parke-Davis*, 147 F. Supp. 2d 39 (D. Mass. 2001)....................10

*United States ex rel. Garst v. Lockheed-Martin Corp.*, 328 F.3d 374 (7th Cir. 2003) .................12

*United States ex rel. Guadalupe v. Goodyear Tire & Rubber Co.*, No. 5:01 CV 2007,
    2005 WL 1324977 (N.D. Ohio June 3, 2005).....................................................6, 17

*United States ex rel. Piacentile v. Wolk*, Civ. A. No. 93-5773,
    1995 WL 20833 (E.D. Pa. Jan. 17, 1995) ..........................................................11

*United States ex rel. Quinn v. Omnicare, Inc.*, 382 F.3d 432 (3d Cir. 2004) .................................5

*United States ex rel. Reagan v. East Texas Medical Center Regional Healthcare Sys.*,
    274 F. Supp. 2d 824 (S.D. Tex. 2003) ..................................................................16

*United States ex rel. Roby v. Boeing Co.*, 100 F. Supp. 2d 619 (S.D. Ohio 2000).......................17

*United States ex rel. Roop v. Hypoguard USA, Inc.*, Civ. No. 07-1600,
    2007 WL 2791115 (D. Minn. Sept. 24, 2007) .........................................................18

*United States ex rel. Schmidt v. Zimmer, Inc.*, 386 F.3d 235 (3d Cir. 2004)...............................10

*United States ex rel. Shaver v. Lucas Western Corp.*, 237 F.3d 932 (8th Cir. 2001) ...................11

*United States ex rel. Totten v. Bombardier Corp.*, 380 F.3d 488 (D.C. Cir. 2004).......................7

*United States v. Advance Tool Co.*, 86 F.3d 1159 (8th Cir. 1996) ...............................................17

*United States v. Bouchey*, 860 F. Supp. 890 (D.D.C. 1994).........................................................22

*United States v. City of Houston*, No. H03-03713,
    2006 WL 2382327 (S.D. Tex. Aug. 16, 2006) ........................................................16

*United States v. Science Applications Int'l Corp.*, 502 F. Supp. 2d 75 (D.D.C. 2007) ...................3

*Witherspoon v. Philip Morris Inc.*, 964 F. Supp. 455 (D.D.C. 1997)............................................19

## STATUTES, RULES AND OTHER AUTHORITIES

31 U.S.C. § 6310..............................................................................................................6

31 U.S.C. § 3729(a)(2)................................................................................................6, 7, 13

31 U.S.C. § 3729(a)(3).................................................................................................14, 16

42 U.S.C. § 3796ll, *et seq.* ....................................................................................................1

Fed. R. Civ. P. 9(b) ................................................................................................. *passim*

Fed. R. Civ. P. 12(b)(6)......................................................................................................3

THE FALSE CLAIMS ACT: FRAUD AGAINST THE GOVERNMENT § 4:4 (2008)................................15

Defendants Toyobo Company, Ltd. and Toyobo America, Inc. (collectively "Toyobo") respectfully submit this Reply to the brief filed by the United States in opposition to Toyobo's Motion to Dismiss (the "Opposition Brief").

## PRELIMINARY STATEMENT

Despite the United States' oft-referenced "149 paragraphs of detailed allegations" in the Complaint, the 43-pages of its Opposition Brief rhetoric fail to show that the Complaint has alleged any claims against Toyobo. Indeed, the United States does not even attempt to dispute Toyobo's contention that all vests reimbursed under the Bullet Proof Vest Grant Partnership Act (the "BVPA"), 42 U.S.C. § 3796ll, *et seq.*, met the only requirement for reimbursement included in the statute—they were certified by the National Institute of Justice (the "NIJ"), the arm of the United States Department of Justice charged with developing performance standards for bullet-resistant vests. Nor does the United States challenge the fact that the NIJ certification standards contained no durability requirements for vests.

The United States' Opposition Brief also does not cure the many deficiencies with respect to its claims for vests the United States purchased directly from the Vest Manufacturers.[1] The United States received repair or replace warranties, not guarantees of performance, on the vests it purchased. Nowhere in its Opposition Brief or its exhibits does the United States show to the contrary. And, nowhere in the Complaint does the United States allege that any manufacturer ever breached these repair or replace warranties, or that any manufacturer never intended to honor the warranties when given.

---

[1] The term "Vest Manufacturers" has the same definition as used in Toyobo's Opening Brief.

Recognizing the many fatal deficiencies in its Complaint, the United States attempts to divert the Court's attention by arguing that the delivery of an allegedly defective product *ipso facto* means a false claim has been submitted to the United States. That is, the United States argues that it did not get what it paid for either when it reimbursed state, local, and tribal law enforcement agencies for vest purchases or when it purchased vests directly. The delivery of a defective product, without more (*e.g.*, failure to meet a bid specification or applicable standard), does not give rise to a violation of the False Claims Act. The United States does not, and cannot, many any such allegation. Thus, none of the arguments in the United States' Opposition Brief can save its fatally flawed claims under the False Claims Act.

The United States' Opposition Brief also fails to explain how its conspiracy claim can stand when the Complaint does not give any of the details of the alleged conspiracy—how many conspiracies exist, who the conspirators are, how and when the conspiracies arose—or include sufficient, plausible allegations of an alleged agreement between Toyobo and unnamed conspirators. Finally, none of the United States' arguments in its Opening Brief address the deficiencies in its common law claims for fraud and unjust enrichment claims. Both fail as a matter of law.

## I.     THE UNITED STATES MISSTATES THE RELEVANT STANDARDS.

Contrary to the United States' assertion that Toyobo's Opening Brief improperly injects additional facts into its motion to dismiss, thereby converting it into a motion for summary judgment (Opp. Br. at 5),[2] all of the information Toyobo relies upon in its Opening Brief is proper for a Court to consider on a motion to dismiss pursuant to

---

[2] Citation to the United States' Opposition Brief will be designated as "Opp. Br.," and citations to Toyobo's Opening Brief will be designated as "Toyobo Mem."

Fed. R. Civ. P. 12(b)(6). Because the United States only quotes parts of documents or refers to only one portion of a document in its Complaint, it is well-settled that Toyobo can refer to the entire document referenced in the Complaint in its motion to dismiss without converting it to a motion for summary judgment. (*See* Toyobo Mem. at 4 n.1); *see also Gustave-Schmidt v. Chao*, 226 F. Supp. 2d 191, 196 (D.D.C. 2002) (noting that on a motion to dismiss, a court *may* consider "the facts alleged in the complaint, documents attached as exhibits *or incorporated by reference in the complaint*, and matters about which the Court may take judicial notice") (emphasis added). All of the materials cited by Toyobo in its Opening Brief, including the documents attached thereto, are either specifically alluded to by the United States in its Complaint or incorporated by reference, or subject to judicial notice. This practice is in keeping with the requirements of Fed. R. Civ. P. 12(b)(6), and ensures that a plaintiff does not manipulate the import of key documents by removing facets of the evidence from their appropriate contexts. *See Gustave-Schmidt*, 226 F. Supp. 2d at 196.

The United States also seeks to downplay the significance of the Supreme Court's decision in *Bell Atlantic Corp. v. Twombly*, __ U.S. __, 127 S. Ct. 1955 (2007). The Supreme Court, however, made clear in *Twombly* that in order to survive a motion to dismiss, the allegations in a complaint must "raise a right to relief above the speculative level." *Id.* at 1965; *see also Sanders v. District of Columbia*, 522 F. Supp. 2d 83, 87 (D.D.C. 2007) (noting that *Twombly* referred to this "newly-clarified standard" as "the plausibility standard"). In fact, this Court has recognized *Twombly's* applicability to motions to dismiss claims brought under the False Claims Act context. *See United States v. Science Applications Int'l Corp.*, 502 F. Supp. 2d 75, 77 (D.D.C. 2007) (RWR). Thus,

following *Twombly*, in order for a claim made under the False Claims Act (or the common law) to survive a motion to dismiss, a complaint must contain direct or inferential allegations with respect to all of the material elements of the claim. 127 S. Ct. at 1965. As demonstrated in Toyobo's Opening Brief, and below, the allegations in the United States' Complaint do not meet the *Twombly* plausibility standard.[3]

## II.   THE UNITED STATES FAILS TO SHOW THAT ANY FALSE CLAIM WAS SUBMITTED IN CONNECTION WITH VEST PURCHASES REIMBURSED UNDER THE BULLET PROOF VEST PARTNERSHIP GRANT ACT.

Nowhere in its Opposition Brief does the United States challenge Toyobo's assertion that the *only* condition for reimbursement under the BVPA is that a vest be NIJ-certified. In fact, outside of a cursory reference to the name of the statute on the first page of its brief, the United States does not even mention the statute or its requirements for reimbursement. And, for good reason—to do so would force the United States to admit that there are no other conditions that the BVPA places on the grants given by the United States to state, local, and tribal law enforcement agencies. Because the only condition the state, local, and tribal law enforcement agencies must certify for reimbursement under the BVPA is that the vests purchased are NIJ certified—which all of the vests at issue were—the United States cannot show that any false claim was submitted to it in connection with these vests. (*See* Toyobo Mem. at 12-15.)

---

[3] The United States' attempt to amend its complaint through its opposition papers by adding additional allegations and citations to documents is improper and should be rejected. *See, e.g., Arbitraje Casa de Cambio, S.A. de C.V. v. United States Postal Svc.*, 297 F. Supp. 2d 165, 170 (D.D.C. 2003) (noting that "[i]t is axiomatic that a complaint may not be amended by the briefs in opposition to a motion to dismiss"); *Rohrbaugh v. Investment Co., Inst.*, No. 00-1237, 2002 WL 31100821, at *5 n.10 (D.D.C. July 02, 2002) (stating that a court will not treat the contents of an opposition to a motion to dismiss as an amendment to a complaint absent a formal motion to amend).

Nor can the United States rebut Toyobo's argument by making light of it.[4] The facts—undisputed by the United States—are that the BVPA does not place any reimbursement requirements on vests purchased by state, local and tribal law enforcement agencies other than that the vest be NIJ certified (*see* Toyobo Mem. at 13), and that the NIJ imposes no durability requirements on the testing and certification of bullet-resistant vests (*see* Toyobo Mem. at 13-14). The NIJ was free to impose durability requirements on vests prior to certifying them—but it imposed no such standards.[5] Congress could have included a guaranteed life span or other durability requirements in the BVPA as a precondition to reimbursement, but it did not. Absent any durability requirements, the United States cannot establish that any false claim was submitted. *See United States ex rel. Quinn v. Omnicare, Inc.*, 382 F.3d 432 (3d Cir. 2004) (no False Claims Act liability where alleged false claim did not violate any applicable regulation). Here, the United States got exactly what it paid for with respect to vests reimbursed under the BVPA—NIJ-certified vests. Therefore, the United States' False Claims Act claims regarding vests reimbursed under the BVPA fail as a matter of law.

The United States attempts to deflect attention from this fatal flaw by arguing that the state, local, and tribal law enforcement agencies "did not get what they paid for because the vests did not meet their five-year warranties," and because these agencies did not get what they paid for, the "Government also did not get what it paid for when it partially reimbursed these agencies for their vests." (Opp. Br. at 17.) This

---

[4] *See* Opp. Br. at 16-17 (characterizing Toyobo's position to be that a manufacturer can escape False Claims Act liability where its product only has to "work" on the first day of its life, and thus pass the NIJ certification test).

[5] As stated in Toyobo's Opening Brief, no durability requirements were included in the NIJ's certification and performance standards until August 2005—well after all of the vests at issue in this case were sold. (*See* Toyobo Mem. at 14 n.11.)

argument fails, though, because the state, local, and tribal law enforcement agencies did get what they paid for—NIJ-certified vests with five-year repair or replace warranties. (*See* Section III. A., *infra*.)  More significantly, the United States has not alleged anywhere in its Complaint that these warranties were not honored, which is necessary to establish a breach of the warranties.  *See Transp. Corp. of Am. v. IBM Corp.*, 30 F.3d 953, 959 (8th Cir. 1994) (holding that the existence of a latent defect is insufficient to establish a breach of warranty absent a showing that the warranty was not honored). And, as discussed below, (*see* Section V., *infra*), the mere sale of an allegedly defective product, without more, cannot give rise to a claim under the False Claims Act.

The United States also seeks to save its BVPA claims by arguing that suppliers must conform to their own commercial requirements where federal funds are used for the procurement of items.  (*See* Opp. Br. at 18.)  This argument fails, however, because the BVPA is a *grant* program, not a *procurement* program.[6]  Therefore, none of the vests reimbursed under the United States were "procured" by federal funds.  Thus, *United States ex rel. Guadalupe v. Goodyear Tire & Rubber Co.*, No. 5:01 CV 2007, 2005 WL 1324977 (N.D. Ohio June 3, 2005), is not relevant to the claims for vests reimbursed under the BVPA.  Additionally, *Guadalupe* involved a contract that specifically required the manufacturers to adhere to their commercial requirements.  *Id.* at *10.  No such contract is alleged by the United States in this case.[7]

---

[6] The Federal Grant and Cooperative Agreement Act, 31 U.S.C. § 6310, *et seq.*, distinguishes between "procurement contracts" which are used "to acquire (by purchase, lease or barter) property or services for the direct benefit or use of the United States Government," and "grant agreements" which are used "to transfer a thing of value to the State or local government or other recipient to carry out a public purpose of support or stimulation authorized by a law of the United States." Because the BVPA reimburses state, local, and tribal law enforcement agencies for vests they procured—not procured by the United States— both its name and its function evidence that the BVPA is a "grant program."

[7] The United States seeks to save its defective False Claims Act claims by arguing that all it has to show under section 3729(a)(2) is that Toyobo made a false statement which caused the submission of a false

Nor are the United States' claims saved by its argument that Toyobo allegedly withheld information that was critical to the Government's decision to pay. (*See* Opp. Br. at 18.) The United States undisputedly received the *only* material information it needed to impose a requirement upon it to provide reimbursement under the BVPA—a certification that the vests purchased were NIJ-certified.[8] Thus, as a matter of law, the United States' claims related to vests reimbursed under the BVPA must fail.

## III. THE UNITED STATES HAS FAILED TO ESTABLISH ANY FALSE CLAIMS ACT LIABILITY AGAINST TOYOBO.

### A. The United States Has Failed To Show That Any False Claim Was Submitted To It In Connection With Any Of the Vests At Issue.

As demonstrated in Toyobo's Opening Brief, even if a product defect arose before the expiration of the five-year warranties that accompanied the vests sold to the United States, this cannot form the basis of a False Claims Act action because these warranties were repair or replace warranties—not guarantees of future performance. (*See* Toyobo Mem. at 17-19.) *See also Transp. Corp. of Am.*, 30 F.3d at 959 (existence of latent defect in computer disk drive insufficient to make out claim for breach of warranty given remedy of "repair or replace"); *Progressive Ins. Co. v. Monaco Coach Corp.*, No. 1:05 CV 37, 2006 WL 839520, at *4 (S.D. Miss. Mar. 29, 2006) (noting that existence of a latent defect in a propane/electric water heater not sufficient to show

---

claim. (*See* Opp. Br. at 19.) Not only has the United States failed to allege that Toyobo actually made a false statement, the law of this Circuit requires direct presentation of the underlying claim to the government. *See United States ex rel. Totten v. Bombardier Corp.*, 380 F.3d 488, 498-502 (D.C. Cir. 2004). Although the United States acknowledges the *Totten* holding is in its Opposition Brief, it argues that *Totten* is wrongly decided and will be overturned by the Supreme Court in *Allison Engine Co., Inc. v. United States ex rel. Sanders*, No. 07-214. (Opp. Br. at 19 n.5) Notwithstanding the United States' ability to foresee how the Supreme Court will rule, *Totten* remains binding precedent in this Court, and disposes of the United States' claims under section 3729(a)(2) for vests reimbursed under the BVPA.

[8] Indeed, while not relevant to this motion, Toyobo believes that the evidence will show that, for this very reason, the United States continued to reimburse state, local, and tribal law enforcement agencies after August 2005 (the date the NIJ allegedly stopped certifying vests containing Zylon) for the Zylon vests they had purchased.

breach of warranty where warranty at issue was a "repair and replace" warranty); *Elec.*

*Ins. Co. v. Freudenberg-Nok, Gen. P'ship*, 487 F. Supp. 2d 849, 904 (W.D. Ky. 2007)

(noting that the tendering of a defective product is not sufficient to support a claim for

breach of warranty where warranty at issue is for "replace or repair").[9]  Indeed, even the

governmental entity charged with developing performance standards for body armor—

the NIJ—acknowledges that the warranties that accompany bullet-resistant vests are not a

benchmark for a vest's service life.  (*See* Toyobo Mem. at 18-19; Lyle Decl. Exh. 2 at

62.)  Thus, the United States' argument in its Opposition Brief that it can establish a false

claim by showing that it paid for vests that may not last the life of their five-year

warranties must fail because the United States cannot establish that these warranties were

ever breached given that it does not allege that any Vest Manufacturer ever refused to

honor its warranty or intended not to honor its warranty at the time it was made.  Nor

does the United States' Complaint allege that Toyobo caused any Vest Manufacturer not

to honor its warranties.  (*See* Toyobo Mem. at 19-20.)[10]

---

[9] The United States attempts to create a "factual" issue by arguing that the warranties given were really not "repair or replace" warranties.  It does so by attaching as exhibits to its Opposition Brief *bid specifications*, not the warranties it alleges were not met.  (*See* Opp. Br., Exhs. 1, 2.)  Indeed, these bid specifications make clear that the actual warranty documents will accompany the vests.  (*See, e.g.,* Opp. Br. Exh. 1, at p. 10, ¶ 10; Opp. Br. Exh. 2, at p. 10, ¶ 10.)  Thus, these exhibits do not show the warranties that actually accompanied the vests purchased by the United States.  Nor does the United States dispute that the warranties cited in Toyobo's Opening Brief reflect the industry standard of a repair or replace warranty. Despite its protestations to the contrary, the United States should not be allowed to maintain a breach of warranty claim (which is essential to its claims under the False Claims Act) by concealing the warranty at issue from the Court.  It is, thus, perfectly appropriate for the Court to consider the warranties referenced in Toyobo's Opening Brief (*see* Toyobo Mem. at 18; Lyle Decl. Exhs. 12, 13)—the ones that were allegedly breached—without converting Toyobo's motion to dismiss to a motion for summary judgment.  (*See* Section I., *supra*.)

[10] The United States argues that because a bullet-resistant vest is a "life-and-death product," the purchaser expects that the accompanying warranty will guarantee performance rather than provide a remedy for repair and replace.  (*See* Opp. Br. 23-24.)  The warranties that accompanied the vests, however, were repair and replace warranties, not guarantees of future performance.  In order to be determined to be guarantees of future performance, the language used by a warranty must be explicit; otherwise, courts hold that the warranties are repair or replace warranties.  *See Joswick v. Chesapeake Mobile Homes, Inc.*, 747 A.2d 214, 219-20 (Md. Ct. Spec. App. 2000) (finding warranty at issue constituted a repair or replace warranty, not a

But, even if the five-year warranties that accompanied the vests sold to the United States were considered guarantees of future performance, this would still not be sufficient to establish False Claims Act liability against Toyobo. The United States would still have to make specific allegations establishing that Toyobo caused the Vest Manufacturers to make such a five-year guarantee. It has not, and cannot, done this. In fact, as the United States concedes in its Complaint, not only did Toyobo continuously disclose information in its possession regarding Zylon, (*see, e.g.,* Compl. at ¶¶ 60, 61, 66, 67, 71, 87, 92), but it also continuously informed its customers that it made no warranty on Zylon and that it was up to users to *decide for themselves* the suitability of Zylon for its intended use (*see* Compl. at ¶ 67; Lyle Decl. Exh. 7). Thus, the United States' own allegations show that Toyobo did not cause any Vest Manufacturer to place any such warranties on its vests.

Additionally, as discussed in Toyobo's Opening Brief, the United States cannot establish False Claims Act liability against Toyobo because statements made and information allegedly withheld by Toyobo was immaterial to the United States' decision to purchase Zylon vests. (*See* Toyobo Mem. at 20-22.) The United States' Opposition Brief attempts to rebut this argument by claiming that nowhere in its Complaint does the United States claim it had all of the information regarding Zylon degradation. (*See* Opp. Br. at 24-25.) This, however, misses the point of Toyobo's argument. All of the various issues regarding Zylon degradation that the United States appears to rely upon to support its claims under the False Claims Act—according to the Complaint—were publicly disclosed at some point by Toyobo. (*See, e.g.,* Compl. at ¶¶ 60, 61, 66, 67, 71, 87, 92.)

---

guarantee of future performance where the exclusive remedy under the warranty was repair or replacement of defect).

Yet, the United States continued to purchase Zylon vests (and the NIJ continued to certify vests) after each of these disclosures. And, in November 2003, the United States Attorney General announced the Bulletproof Vest Safety Initiative, which was designed to "address the reliability of body armor used by law enforcement personnel and to examine the future of bullet-resistant technology and testing."[11] As part of this initiative, the NIJ was directed to examine all Zylon-containing bullet-resistant vests and verify the propriety of its performance standards. *See id.* But, even after this announcement by the Attorney General of the United States, the United States still continued to purchase Zylon-containing vests (and the NIJ continued to certify them). Thus, the information disclosed, or allegedly withheld, by Toyobo about Zylon degradation could not have been material to the United States' decision to purchase and certify Zylon-containing vests. Therefore, the United States' False Claims Act claims against Toyobo must fail as a matter of law. (*See* Toyobo Mem. at 20-22.)

**B.    The United States' Own Allegations Show That Toyobo Did Not Cause Any False Claim To Be Submitted.**

Contrary to the United States' assertion in its Opposition Brief, the standard for causation under the False Claims Act is far more demanding than a mere "substantial factor" test. (Opp. Br. at 26.)[12] The False Claims Act's causation element

---

[11] This announcement is available online at http://www.ojp.usdoj.gov/bvpbasi/, and the Court can take judicial notice of this document as part of this motion to dismiss. *See Gustave-Schmidt, supra.*

[12] The United States mischaracterizes the holdings in *United States ex rel. Schmidt v. Zimmer, Inc.*, 386 F.3d 235 (3d Cir. 2004) and *United States ex rel. Franklin v. Parke-Davis*, 147 F. Supp. 2d 39 (D. Mass. 2001) as standing for the general proposition that a substantial factor test is the appropriate standard for establishing causation under the False Claims Act. (*See* Opp. Br. at 26-27.) Both *Schmidt* and *Franklin* involve allegations that illegal marketing campaigns by manufacturers caused the submission of false claims for Medicare reimbursement. Contrary to the United States' assertion that these cases endorse a substantial factor test for all False Claims Act claims, however, they merely hold that where a defendant's illegal marketing campaign causes the submission of false claims for Medicare reimbursement, the foreseeable actions of third parties (hospitals, physicians, and pharmacists) are insufficient to break the chain of legal causation. *See Schmidt,* 386 F.3d at 244-45; *Franklin,* 147 F. Supp. 2d at 51-53.

requires a strong nexus between a defendant's knowing conduct and the submission of a false claim. *See United States ex rel. Camillo v. Ancilla Sys., Inc.*, No. 03-CV-0024, 2005 WL 1669833, at *4 (S.D. Ill. July 18, 2005) (stating that "[t]he creation of general circumstances leading to the submission of false claims are insufficient to state a FCA violation"). Indeed, "[m]ere knowledge of a claim with nothing more does not constitute a violation." *Id.* at *3. Given that the basis of the United States' claims under the False Claims Act appear to be the five-year warranties placed on Zylon vests by the Vest Manufacturers when the vests would purportedly not last five years,[13] in order to establish causation, the United States must show some knowing action by Toyobo that caused the Vest Manufacturers to submit vests with five-year warranties. *See United States ex rel. Shaver v. Lucas Western Corp.*, 237 F.3d 932, 933 (8th Cir. 2001) (dismissing False Claims Act case because there was no allegation that the defendant "affirmatively instructed" the relator to submit a false claim to the government, but merely that the defendant knew that he was going to do so); *United States ex rel. Piacentile v. Wolk*, Civ. A. No. 93-5773, 1995 WL 20833, at *4 (E.D. Pa. Jan. 17, 1995) (stating that "[t]he False Claims Act requires both knowledge of a claim's falsity and some action by the defendant which causes the claim to be presented to the government"). Nowhere in its Opposition Brief does the United States explain how Toyobo knowingly caused the Vest Manufacturers to place five-year warranties on their

---

[13] The United States also appears to argue that the mere delivery of a defective product is a sufficient basis for False Claims Act liability. However, as demonstrated in Section V., *infra*, in order to state a false claim, the United States must show more than mere receipt of a defective product.

vests. Thus, the heightened pleading requirements of Fed. R. Civ. P. 9(b) mandate

dismissal of the United States' False Claims Act claims against Toyobo.[14]

Not only does the United States fail to offer specific allegations regarding

"facts as to time, place, and substance of the defendant's alleged fraud," *United States ex*

*rel. Clausen v. Lab. Corp. of Am., Inc.*, 290 F.3d 1301, 1310 (11th Cir. 2002), the United

States does not allege *any* specific action taken by Toyobo that "caused" any of the Vest

Manufacturers to place five-year warranties on their vests, knowing the vests may not last

five years. Rather, as pointed out in Toyobo's Opening Brief, the allegations in the

Complaint establish that Toyobo could *not* have caused the Vest Manufacturers to place

five-year warranties on their vests. (*See* Toyobo Mem. at 23-24.) The Complaint

acknowledges the numerous disclosures by Toyobo stating that it provided *no warranty*

on Zylon and that Toyobo refused to make any representations about the use of Zylon in

the Vest Manufacturers' vests. (*See, e.g.*, Compl. at ¶¶ 55, 61.) [15] In light of these

disclosures by Toyobo, the United States' conclusory statements that Toyobo "knowingly

caused to be presented false or fraudulent claims to the United States for payment"

(Compl. at ¶ 128), do not "raise a right to relief above the speculative level," and

---

[14] As discussed in Toyobo's Opening Brief, False Claims Act cases are subject to the heightened pleading requirements of Fed. R. Civ. P. 9(b). (*See* Toyobo Mem. at 23.) *See also United States ex rel. Garst v. Lockheed-Martin Corp.*, 328 F.3d 374, 375 (7th Cir. 2003). This requires False Claims Act pleadings to include specific allegations regarding "'facts as to time, place, and substance of the defendant's alleged fraud,'" including "details of the defendants' [] allegedly fraudulent acts, when they occurred, and who engaged in them." *United States ex rel. Clausen v. Lab. Corp. of Am., Inc.*, 290 F.3d 1301, 1308 (11th Cir. 2002) (quoting *Cooper v. Blue Cross & Blue Shield of Fla., Inc.*, 19 F.3d 562, 567-68 (11th Cir. 1994)).

[15] As pointed out in Toyobo's Opening Brief (Toyobo Mem. at 23-24), in a July 5, 2001 letter from Toyobo to its customers, Toyobo alerted Vest Manufacturers to Zylon fiber degradation issues under conditions of high heat and humidity, and also informed them that "the age of the sample we could check is only up to two years and it is impossible for us to guarantee 10 years based on the result." (*See* Compl. at ¶ 60, Lyle Decl. Exh. 3.) In addition to this letter, Toyobo informed its customers on numerous occasions of issues surrounding Zylon. (*See* Toyobo Mem. at 6-9.) Additionally, in a July 19, 2001 letter from Toyobo to its customers, Toyobo reminded bullet-resistant Vest Manufacturers that "Toyobo [was] not in a position to guarantee the performance of end products and of course the lifetime of each end product." (Compl. at ¶ 61; Lyle Decl. Exh. 5.)

therefore, and must fail. *See, e.g., Twombly*, 127 S. Ct. at 1965 (noting that a plaintiff must plead "more than labels and conclusions," and that "a formulaic recitation of the elements of a cause of action will not do").

Recognizing the deficiencies of its allegations regarding the vests' five-year warranties, the United States argues that Toyobo caused false or fraudulent claims to be presented by encouraging the Vest Manufacturers to sell allegedly defective Zylon vests. (*See* Opp. Br. at 27-29.)[16] As discussed below, however, the mere delivery of a defective product does not, without more, give rise to a false claim. (*See* Section V., *infra*.) And, contrary to the United States' assertions in its Opposition Brief, the Complaint does not allege with sufficient specificity any action taken by Toyobo that caused the Vest Manufacturers to sell defective Zylon vests to the United States.[17]

## IV.    THE UNITED STATES FAILS TO SHOW THAT THE COMPLAINT CONTAINS SUFFICIENT ALLEGATIONS OF A FALSE CLAIMS ACT CONSPIRACY.

Notwithstanding the United States' claim that the Complaint is "replete with allegations that Toyobo conspired with other participants" to "get the United States to purchase Zylon vests," (Opp. Br. at 31), the fact remains that the Complaint does not identify even the most basic elements of a conspiracy claim, such as who Toyobo allegedly conspired with, how and when the conspiracy arose, whether it was one or multiple conspiracies, or what act was committed in furtherance of the conspiracy. All of

---

[16] Additionally, as discussed above, p. 6 n.7, *supra*, in order to establish liability under section 3729(a)(2), *Totten* requires the presentment of an allegedly false statement directly to the government.

[17] The United States spends a significant amount of time in the Complaint and the Opposition Brief discussing Toyobo's alleged omissions following the discovery of Red Thread. (*See, e.g.*, Compl. at ¶¶ 37, 42-45, 51, 87-91; Opp. Br. at 11-13, 28.) This discussion, however, is nothing more than a red herring, as the United States has not alleged that *any* Red Thread *ever* made it into *any* vest sold to the United States. Absent such an allegation, the United States' discussion of Red Thread is entirely irrelevant to the claims in this case.

these details must be pled in order to pursue a claim under section 3729(a)(3). *See*

*United States ex rel. Capella v. Norden Sys., Inc.*, No. 3:94-CV-2063, 2000 WL 1336487,

at *11 (D. Conn. Aug. 24, 2000) (dismissing section (a)(3) conspiracy claim as failing to

meet the particularity standards required by Fed. R. Civ. P. 9(b) where the "complaint

merely allude[d] to an agreement between Defendants and [did] not specify the

particulars of how and when [the] alleged conspiracy arose, who entered into it, or what

act was committed in furtherance of the conspiracy").

   In an effort to save its conclusory conspiracy allegations, the United States

references several paragraphs in the Complaint which purportedly contain allegations that

"Toyobo's representatives met with several other participants in the Zylon vest industry

to guarantee the continued sale of these defective bulletproof vests." (Opp. Br. at 35.) A

close inspection of these paragraphs, however, reveals that there are *no* allegations that

*any agreement* was made at these meetings—let alone an agreement between Toyobo and

another entity to sell the United States Zylon vests with five-year warranties knowing that

the vests would not last five years. For example, paragraph 99 of the Complaint simply

alleges that Toyobo met with Hexcel and discussed "Red Thread."[18]  Paragraph 105 of

the Complaint merely alleges that Toyobo met with Point Blank.  Similarly, paragraph

106 alleges that Toyobo met with Hexcel to discuss "Red Thread."  Paragraph 107 does

not allege that Toyobo met with anyone, let alone entered into any agreement.  Paragraph

110 only alleges that Toyobo met with Itochu and Lincoln "about Red Thread" and does

not allege any agreement between Toyobo and any party.  Paragraph 112 alleges that

Toyobo, Itochu and Hexcel made presentations to Point Blank and Armor Holdings

---

[18] As discussed above, *see* p. 13 n.17, the United States' allegations regarding Red Thread are entirely irrelevant to this case given that there are no allegations of Red Thread being used in any vest sold to the United States.

purportedly "to convince these ballistic vest manufacturers to continue buying Toyobo's Zylon," but again fails to allege any agreement. Finally, Paragraph 119 simply alleges that "Toyobo met with Barrday and Teijin Shoji concerning Zylon." This failure to plead an agreement, which is the essence of a conspiracy under the False Claims Act, is fatal to the United States' conspiracy claim. *See* THE FALSE CLAIMS ACT: FRAUD AGAINST THE GOVERNMENT § 4:4 (2008) ("The essence of a conspiracy is an agreement between the defendant and one or more persons to commit a wrongful act. … Failure to allege or prove an agreement among co-conspirators is fatal to a subsection (a)(3) claim.") (collecting cases).

The Complaint's so-called conspiracy allegations allege, at most, that Toyobo, a fiber manufacturer, met with some of its customers. While the United States makes great hay about all of these "meetings," multiple inferences can be drawn from business meetings among commercial entities. Thus, simply alleging that there were various meetings is insufficient for the United States to assert a conspiracy claim. *See Twombly*, 127 S. Ct. at 1965-66 (parallel conduct insufficient to establish claim of antitrust conspiracy absent an agreement); *see also United States ex rel. Amin v. George Washington University*, 26 F. Supp. 2d 162, 165 (D.D.C. 1998) (dismissing conspiracy claim where the complaint failed "to *identify any agreement* between the parties to defraud the government or *to engage in any act* that could constitute an attempt to defraud the government" and noting that "the activities alleged consist[ed] of entirely lawful pursuits") (emphasis in original).

And, contrary to the United States' assertion that there is a "dearth of authority" supporting Toyobo's position that the United States must show a specific

intent to defraud in order to state a conspiracy claim under section 3729(a)(3), (Opp. Br.

at 32 n.8), a number of courts—in addition to those cited in Toyobo's Opening Brief (*see*

Toyobo Mem. at 29-30)—have held that the conspiracy provision of the False Claims Act

requires the specific intent to defraud. *See, e.g., United States ex rel. Reagan v. East*

*Texas Medical Center Regional Healthcare System*, 274 F. Supp. 2d 824, 857 (S.D. Tex.

2003) ("In the context of an FCA conspiracy, the evidence must show that the alleged

conspirators shared a 'specific intent to defraud' the government."); *United States v. City*

*of Houston*, No. H03-03713, 2006 WL 2382327, at *8 (S.D. Tex. Aug. 16, 2006) (same);

*United States ex rel. Atkinson v. Pennsylvania Shipbuilding Co.*, No. Civ. A. 94-7316,

2004 WL 1686958, at * 5 (E.D. Pa. July 28, 2004) ("To 'raise a fact question' in an FCA

conspiracy case…plaintiff 'must provide proof that [defendants] each intended to commit

[] fraud, and that they entered into an agreement with that specific objective.'") (citation

omitted). As Toyobo demonstrated in its Opening Brief, the Complaint is replete with

allegations that Toyobo *disclosed* information in its possession regarding Zylon

degradation. (*See* Compl. at ¶¶ 60, 61, 66, 67, 71, 87, 92.) These allegations are entirely

inconsistent with any intent to conceal information from the United States. As such, the

Complaint fails to allege facts sufficient to demonstrate an intent to defraud the United

States.

## V.    A DEFECTIVE PRODUCT DOES NOT EQUATE TO A FALSE CLAIM.

As demonstrated above, and in Toyobo's Opening Brief, the United

States' arguments regarding the failure of Zylon-containing vests to meet their five-year

warranties is insufficient to establish False Claims Act liability against Toyobo.

Apparently recognizing the many deficiencies in its arguments, the United States

attempts to argue throughout its Opposition Brief that because it has alleged that the

United States received a defective product, it *ipso facto* has received false claims. The United States, however, does not cite any authority to support its argument that the mere delivery of a defective product is sufficient to support a False Claims Act claim. Nor can they—the delivery of a defective product to the United States is not, without more, sufficient to establish that a false claim was submitted. *See United States ex rel. Anderson v. Northern Telecom, Inc.*, 52 F.3d 810 (9th Cir. 1995); *United States ex rel. Roby v. Boeing Co.*, 100 F. Supp. 2d 619, 626 (S.D. Ohio 2000) (noting that the "mere presence of a defect [does not] create liability under the [FCA]").[19] Nowhere in the Complaint is there a single allegation that any of the Zylon-containing vest purchased by the United States failed to meet any contract specification, bid specification, industry standard or regulation, or government standard or regulation. Absent such an allegation, the mere delivery of a defective product is insufficient to sustain False Claims Act liability. *See, e.g., Guadalupe*, 2005 WL 1324977 at *13 (dismissing False Claims Act claim where "despite his incendiary allegations, Relator [] failed to identify a single military or Goodyear specification that Goodyear violated when it manufactured the tires it sold to the Government"); *Roby, supra.*[20]

---

[19] Although the court in *Roby* denied summary judgment because of the existence of questions of material fact related to whether or not the component-part manufacturer met contractual specifications. 100 F. Supp. at 636. No such factual issues exist in this case.

[20] This case is not the prototypical False Claims Act case relating to the sale of a product to the federal government in which the quality of the product is alleged to depart from the government's contractual standards. *See, e.g., United States v. Advance Tool Co.*, 86 F.3d 1159 (8th Cir. 1996) (affirming False Claims Act liability for defendant's noncompliance with contractual requirement that he furnish "brand name" products); *Daff v. United States*, 78 F.3d 1566 (Fed. Cir. 1996) (affirming False Claims Act liability for defendant's failure to comply with contractual specifications regarding the materials used in the manufacturing of components for guided missile system). Here, the United States got precisely what it paid for—Zylon-containing bullet-resistant vests with five-year repair or replace warranties. Nowhere in its Complaint does the United States allege that the vests failed to meet NIJ standards or any specification put out by the United States. Indeed, it is interesting to note that the United States attached two bid specifications, (*see* Opp. Br. Exhs. 1, 2), but does not claim that any vest failed to meet those specifications.

For example, in *United States ex rel. Roop v. Hypoguard USA, Inc.*, Civ. No. 07-1600, 2007 WL 2791115 (D. Minn. Sept. 24, 2007), the plaintiff alleged that the defendant, Hypoguard, sold defective blood-testing meters knowing they would be subject to Medicare reimbursement. The Court held that these allegations were insufficient to create liability under the False Claims Act, noting that the tendering of a defective product, in the absence of allegations that the product "failed to comply with any statute or FDA regulation," fails to demonstrate the existence of a false claim. *Id.* at *2.

Similarly, in *United States ex rel. Anderson v. Northern Telecom, Inc.*, the Ninth Circuit held that the mere allegation that defendant delivered a faulty telecommunications switch to the government did not satisfy the False Claims Act requirement of a false or fraudulent claim. 52 F.3d at 817. Although there was evidence that the switch did not work properly at the time it was installed, the court held that this did not lead to a permissible inference of presentation of a false or fraudulent claim. *Id.* Because the United States does not allege anything more than a defective product, and because the United States fails to cite any authority (other than its own say so) supporting the proposition that the tendering of a defective product alone creates liability under the False Claims Act, its False Claims Act claims must be dismissed as a matter of law.

## VI.    THE UNITED STATES CANNOT ESTABLISH COMMON LAW LIABILITY AGAINST TOYOBO.

### A.    The Complaint Does Not Allege Common Law Fraud.

As demonstrated in Toyobo's Opening Brief, the United States' claim for common law fraud suffers from the same fatal defects as its False Claims Act claims, and therefore, this claim should be dismissed for failure to meet the heightened pleading

requirements of Fed. R. Civ. P. 9(b). (*See* Toyobo Mem. at 30-32.) *See also*

*Witherspoon v. Philip Morris Inc.*, 964 F. Supp. 455, 459 (D.D.C. 1997). In addition,

Toyobo's Opening Brief demonstrates that the United States' common law fraud claim

fails as a matter of law because the United States did not show that Toyobo had any duty

to disclose information regarding Zylon to the United States. (*See* Toyobo Mem. at 32.)

In an attempt to save its fatally defective common law fraud claims, the

United States attempts to confuse the Court by conflating its treatment of two distinct

forms of fraud claims—fraud by affirmative misrepresentation and fraud by non-

disclosure. When considered separately under the appropriate standard for each distinct

theory of fraud, the United States fails to state a claim under either theory.

First, the United States argues that Toyobo committed fraud by affirmative

misrepresentation by allegedly stating that "Zylon vests . . . were 'bulletproof' and would

remain 'bulletproof' for five years." (Compl. at ¶ 138.) As pointed out in Toyobo's

Opening Brief, however, the United States has not offered any support for this allegation;

it has not identified who at Toyobo made these statements, when they were made, where

they were made, to whom they were made, or how the United States relied on them.

(Toyobo Mem. at 31.) In fact, not only has the United States failed to provide support for

this allegation, but it contradicts itself by arguing in the Complaint that Toyobo

consistently informed its customers that it placed no warranty on Zylon (*see, e.g.,* Compl.

at ¶¶ 55, 61). Absent any support, this allegation is insufficient to meet the requirements

for pleading fraud with particularity under Fed. R. Civ. P. 9(b) and should be dismissed.[21]

---

[21] Such an affirmative misrepresentation theory is also inconsistent with the United States' view that
Toyobo never gave the United States any information about Zylon. (*See* Opp. Br. at 6.)

The United States also cannot establish that Toyobo committed fraud by non-disclosure. In order to establish that Toyobo committed fraud by failing to disclose information, the United States must first demonstrate that Toyobo owed a duty to the United States to disclose such information—a prerequisite the United States has completely failed to allege. *See generally Daisley v. Riggs Bank, N.A.*, 372 F. Supp. 2d 61, 78 (D.D.C. 2005) (noting that concealment of a fact that should be disclosed can constitute fraud where there is a duty to disclose); *see also In re General Motors Corp. Anti-Lock Brake Prod. Liab. Litig.*, 966 F. Supp. 1525, 1535 (E.D. Mo. 1997) ("To recover for fraudulent concealment, plaintiffs must prove that defendants had a duty to disclose concealed information."). A duty to disclose arises only in situations where a transactional setting gives rise to some sort of relationship between the parties. *See Deteresa v. American Broadcasting Cos.*, 121 F.3d 460, 467 (9th Cir. 1997) (noting that a duty to disclose "presupposes the existence of some other relationship between the plaintiff and defendant. … [s]uch relationships are created by transactions between parties from which a duty to disclose facts material to the transaction arises under certain circumstances") (citations omitted); *see also Hoey v. Sony Electronics*, 515 F. Supp. 2d 1099, 1105 (N.D. Cal. 2007) (holding that Sony did not have a duty to disclose an alleged defect in its computers because the mere sale of a consumer product does not impose upon the manufacturer the "duty to disclose any defect that may occur during the useful life of the product"); *KML Laboratories Ltd. v. Hopper*, 830 F. Supp. 159, 167 (E.D.N.Y. 1993) (noting that "[d]efendants' fraudulent concealment claim fails because no relationship existed that created a duty to disclose"). The United States has not alleged that *any* relationship existed between the Government and Toyobo, much less a

relationship that would trigger a duty to disclose. The Complaint does not even allege

that Toyobo ever had any contact with the United States regarding the vests it purchased.

Nor is the United States' fraud claim saved by its argument that Toyobo's

alleged duty to disclose arises out of the "life-and-death nature" of bullet-resistant vests.

(Opp. Br. at 39.) None of the cases cited by the United States to support this theory deal

with products of a "life-and-death" nature. *See In re Eashai*, 87 F.3d 1082 (9th Cir.

1996) (credit card fraud); *Independent Bus. Forms, Inc. v. A-M Graphics, Inc.*, 127 F.3d

698 (8th Cir. 1997) (printing presses); *Eastman Kodak Co. v. Wachovia Bank Nat. Ass'n*,

No. 02-CV-6441T, 2007 WL 2406919 (W.D.N.Y. Aug. 21, 2007) (fraud arising out of

loan agreement); *In re Ford Motor Co. Ignition Switch Prod. Liab. Litig.*, No. 96-3125,

2001 WL 1266317 (D.N.J. Sept. 30, 1997) (faulty ignition switches).[22] Further, these

cases all involved a pre-existing, commercial relationship between the parties—which is

nonexistent in this case.[23] Requiring such a relationship makes perfect sense given that

imposing a duty to disclose in its absence would require component-part manufacturers to

reach out to a class of otherwise unidentified persons. Because the United States fails to

allege a relationship between it and Toyobo that would give rise to a duty to disclose, its

claim that Toyobo committed fraud by non-disclosure not only fails the requirements of

Fed. R. Civ. P. 9(b) that claims of fraud be pled with particularity, *see Chelsea*

---

[22] Although the allegations in the *In re Ford* case dealt with faulty ignition switches that short-circuited causing damage to vehicles from smoke and fire, there were no allegations that this presented a risk of harm to consumers, and the court's discussion did not turn on the nature of the product.

[23] The court in *In re Ford* held that the component-part manufacturer who supplied the allegedly defective ignition switches owed a duty to disclose the defective nature of its switches to consumers. 2001 WL 1266317, at *20-21. However, there is no indication that the manufacturer of the end-product, Ford, was aware of the defect in the ignition switches, and therefore, the component-part manufacturer was the only party with knowledge of the defect. Here, the United States has acknowledged that Toyobo continuously disclosed information regarding the physical properties of Zylon to the Vest Manufacturers. Therefore, this case does not support the United States' theory that Toyobo had a duty to disclose information about Zylon to vest purchasers.

*Condominium Unit Owners Assoc. v. 1815 A St. Condominium Group, LLC*, 468 F. Supp.

2d 136, 146 (D.D.C. 2007), but must fail as a matter of law. *See, e.g., Deteresa, supra;*

*KML Laboratories, supra.*

> **B.     The United States Cannot Establish That Toyobo Was
>          Unjustly Enriched.**

The United States alleges that Toyobo has been unjustly enriched through

the receipt of money from the Vest Manufacturers for Zylon used in allegedly defective

vests purchased by the United States. (*See* Compl. at ¶ 149.)  However, as discussed in

Toyobo's Opening Brief (Toyobo Mem. at 32-34), the facts alleged by the United States

fail to demonstrate that the United States conferred any benefit upon Toyobo—an

essential component of an unjust enrichment claim. *United States v. Bouchey*, 860 F.

Supp. 890, 894 (D.D.C. 1994).  Rather, as the United States concedes in its Complaint,

any benefit conferred by the United States was conferred on the Vest Manufacturers, not

Toyobo. (Compl. at ¶ 148.)  Furthermore, any benefit Toyobo arguably received was

conferred by the Vest Manufacturers or other third parties, not by the United States.  This

is insufficient to satisfy the first element of an unjust enrichment claim. *See Oceanic*

*Exploration Co. v. ConocoPhillips, Inc.*, No. 04-332, 2006 WL 2711527 (D.D.C. Sep. 21,

2006) (dismissing plaintiff's claim for unjust enrichment where only benefit allegedly

conferred on defendant was by third party).

The United States, in its Opposition Brief, attempts to circumvent this

requirement, claiming that under District of Columbia law, an indirect benefit is

sufficient to state a claim for unjust enrichment. (Opp. Br. at 40.)  In support of this

claim, the United States cites a series of cases involving claims by purchasers against

manufacturers for alleged price-fixing and artificial price hikes. *See, e.g., In re*

*Lorazepem & Clorazepate Antitrust Litig.*, 295 F. Supp. 2d 30 (D.D.C. 2003); *D.R. Ward Constr. Co. v. Rohm & Haas Co.*, 470 F. Supp. 2d 485 (E.D. Pa. 2006); *In re K-Dur Antitrust Litig.*, 338 F. Supp. 2d 517 (D.N.J. 2004); *In re Cardizem CD Antitrust Litig.*, 105 F. Supp. 2d 618 (E.D. Mich. 2000). Rather than standing for the general proposition that an indirect benefit is sufficient to satisfy the first element of an unjust enrichment claim, these cases involve unique factual circumstances where the benefit conferred by the plaintiff was clearly traceable to the manufacturer defendants—a circumstance not present in this case. For example, *In re Lorazepem* involved allegations of price-fixing related to generic anti-anxiety drugs by several insurance companies. 295 F. Supp. 2d 30. The court held that because the insurance companies were ultimately the ones "forced to eat these price hikes"—unlike their members, whose co-payments were the same regardless of the drugs' costs following the price increases—there was a clear benefit conferred by the plaintiffs on the defendants. *Id.* at 51.

Essentially, the *Lorazepem* court found that despite plaintiffs' roles as indirect purchasers, because payments for the increased drug costs came from the insurance companies' assets and went directly to the defendant manufacturers, the insurance companies had conferred a direct benefit on the drug companies. *Id.* There is no such traceable benefit in this case. Given that "every unjust enrichment case is factually unique" (Opp. Br. at 40), the cases cited by the United States fail to support the proposition that purchasers may recover from component-part manufacturers on the theory that they somehow indirectly benefited from transactions occurring between other unrelated parties.

The bottom line is that the facts alleged by the United States in this case do not show that it conferred any benefit upon Toyobo for purposes of an unjust enrichment claim. All the United States alleges is that it paid the Vest Manufacturers for allegedly defective Zylon vests, and that Toyobo, therefore, may at some point have received some of the money which the United States paid. (Compl. at ¶¶ 147-49.) Such allegations do not rise to the standard laid out by *Twombly*, that a complaint must plead sufficient facts to "raise a right to relief above the speculative level." *Twombly*, 127 S. Ct. at 1965.

## CONCLUSION

For the reasons discussed above and in its Opening Brief, Toyobo respectfully requests that the Complaint be dismissed, and that Toyobo be granted such other and further relief as the Court deems just and proper.

Dated: February 1, 2008

*/s/ Michael J. Lyle*
Michael J. Lyle, Esq.
Holly E. Lyle, Esq.
WEIL, GOTSHAL & MANGES LLP
1300 Eye Street, NW - Suite 900
Washington, D.C. 20005
Telephone: (202) 682-7000
Facsimile: (202) 857-0940

Arvin Maskin, Esq.
Konrad L. Cailteux, Esq.
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

*Attorneys for Defendants*
*Toyobo Company, Ltd.*
*and Toyobo America, Inc.*

## CERTIFICATE OF SERVICE

I, Loughran Potter, hereby certify that on February 1, 2008, I caused a true

and accurate copy of the within Toyobo Co., Ltd.'s and Toyobo America, Inc.'s Reply

Memorandum in Further Support of Their Motion to Dismiss to be served by electronic

mail and first class mail on:

_____

Loughran Potter

Alicia Bentley, Esq .
U. S. Department of Justice
Commercial Litigation Branch
P.O. Box 261
Ben Franklin Station
Washington D .C. 20044
(Plaintiff, the UNITED STATES OF AMERICA)