# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff | ) | CV No. 07-1144 (RWR) |
| | ) | |
| | ) | |
| v. | ) | **TOYOBO CO. LTD. AND** |
| | ) | **TOYOBO AMERICA INC.'S** |
| | ) | **NOTICE OF SUPPLEMENTAL** |
| TOYOBO CO., LTD., and TOYOBO | ) | **AUTHORITY** |
| AMERICA, INC., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

Defendants Toyobo Co., Ltd. and Toyobo America, Inc. (collectively "Toyobo") respectfully submit this Notice identifying a supplemental authority decided since the filing of Toyobo's Reply (Doc. 21) to the United States' Brief in Opposition (Doc. 19) to Toyobo's Motion to Dismiss (Doc. 14).

In the Motion to Dismiss, at pages 22-24, and in the Reply, at pages 10-13, Toyobo argues that the United States cannot demonstrate that Toyobo had the requisite scienter for liability under the False Claims Act. Additionally, on pages 20-22 of the Motion to Dismiss and on pages 9-10 of the Reply, Toyobo argues that any allegedly false statement regarding degradation of Zylon was immaterial because the United States continued to purchase Zylon vests after being informed of degradation data.

After the briefing on Toyobo's Motion to Dismiss was completed, the United States Court of Appeals for the District of Columbia Circuit decided *United States ex rel. K&R Limited Partnership v. Massachusetts Housing Finance Agency*, 530 F.3d 980

(D.C. Cir. 2008), which analyzed what a plaintiff asserting claims under the False Claims

Act ("FCA"), 31 U.S.C. §§ 3729-3731, must show with respect to a defendant's scienter

in order to establish liability.  The Court noted the defendant must make false claims

"knowingly" in order to establish liability under the FCA, which at a minimum requires

the defendant to have "at least recklessly disregarded the falsity of its claims."

*Massachusetts Housing*, 530 F.3d at 983.  In pertinent part, the Court held that a

defendant's disclosure of the alleged falsity to the government, coupled with the

government's continued payment of the alleged false claims, suggests that the defendant

did not act with reckless disregard:

> MassHousing made no secret of the 1993 bond refund and during a HUD
> audit the next year, MassHousing specifically brought the 1993 refund to
> HUD's attention, albeit for a somewhat different issue. *Cf. United States
> ex rel. Totten v. Bombardier Corp.*, 380 F.3d 488, 496 (D.C. Cir. 2004)
> ("if the claimant has told the [government official] pertinent facts that
> would, in the absence of such disclosure, make a claim fraudulent, it
> seems that the claimant has not 'knowingly' presented a false claim").
> There is no evidence HUD expressed any concerns and, in fact, HUD
> continued (and continues) to pay MassHousing even after K & R filed this
> lawsuit. Although the fact the government continues to pay claims might
> not preclude a finding of knowledge, here that fact at least suggests
> MassHousing did not act with reckless disregard.

*Id*. at 984.

A copy of the *Massachusetts Housing* decision is attached as Exhibit 1.

Respectfully submitted,

 /s/  Michael J. Lyle
Michael J. Lyle, Esq.
Holly E. Loiseau, Esq.
WEIL, GOTSHAL & MANGES LLP
1300 Eye Street, NW Suite 900
Washington, D.C. 20005
Telephone: (202) 682-7000
Facsimile : (202) 857-0940

Arvin Maskin, Esq.
Konrad L. Cailteux, Esq.
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

*Attorneys for Defendants Toyobo Co., Ltd.,
and Toyobo America, Inc.*

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on this 13th day of August 2008, Toyobo's Notice of Supplemental Authority was filed electronically. Notice of the filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt.

 /s/ Loughran Potter
Loughran Potter

# Exhibit 1

530 F.3d 980                                                                                                    Page 1
530 F.3d 980
**(Cite as: 530 F.3d 980)**

H

United States Court of Appeals,
District of Columbia Circuit.
UNITED STATES EX REL. K & R LIMITED
PARTNERSHIP, Appellant
v.
MASSACHUSETTS HOUSING FINANCE
AGENCY, Appellee.
No. 07-7014.

Argued May 8, 2008.
Decided July 8, 2008.

**Background:** Relator filed qui tam action against Massachusetts Housing Finance Agency (MHFA), as mortgage lender, under **False Claims Act** (FCA), alleging that MHFA knowingly submitted excessive subsidy payment claims to Department of Housing and Urban Development (HUD) under mortgage assistance program for owners of low- and moderate-income housing projects, pursuant to National Housing Act. The United States District Court for the District of Columbia, Royce C. Lamberth, J., 456 F.Supp.2d 46, granted MHFA summary judgment. Relator appealed.

**Holding:** The Court of Appeals, Brown, Circuit Judge, held that MHFA did not knowingly submit false claims to HUD in violation of FCA. Affirmed.

West Headnotes

**[1] Federal Civil Procedure** ⬤➞**2515**
170Ak2515
To successfully oppose summary judgment for a claim under the **False Claims Act** (FCA), the nonmoving party must show that a reasonable factfinder, drawing all justifiable inferences from the evidence in the nonmoving party's favor, could find the moving party at least recklessly disregarded the falsity of its claims to an officer or employee of the federal government.

31 U.S.C.A. § 3729(b).

**[2] United States** ⬤➞**120.1**
393k120.1
Under the **False Claims Act** (FCA), defendant's "reckless disregard" as to falsity of his claims to officer or employee of the federal government is an extreme version of ordinary negligence. 31 U.S.C.A. § 3729(b).

**[3] United States** ⬤➞**120.1**
393k120.1
Massachusetts Housing Finance Agency's (MHFA) interpretation of mortgage notes, without obtaining legal opinion or prior approval of Department of Housing and Urban Development (HUD), did not constitute "reckless disregard" for alleged false claims for subsidy payments submitted to HUD after MHFA's bond refund, as required for MHFA to knowingly make excessive claims in violation of **False Claims Act** (FCA) as asserted by relator in qui tam action, where MHFA specifically brought to HUD's attention MHFA's bond refund to lower its debt service, and HUD continued to pay claims. 31 U.S.C.A. § 3729(b).

**\*981** Appeal from the United States District Court for the District of Columbia, (No. 99cv01343).

Carl A.S. Coan, Jr. argued the case for appellant. With him on the briefs was Carl A.S. Coan III.

Michael J. Tuteur argued the cause for appellee. With him on the brief were Lawrence M. Kraus and Stuart M. Gerson.

Before: TATEL, BROWN, and KAVANAUGH, Circuit Judges.

Opinion for the Court filed by Circuit Judge BROWN.

BROWN, Circuit Judge:

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Forty years ago Jimi Hendrix trilled his plaintive query: "Is this love, baby, or is it ... [just] confusion?" JIMI HENDRIX, *Love or Confusion, on* ARE YOU EXPERIENCED (Reprise Records 1967). In this **False Claims Act** case, we face a similar question involving a mortgage subsidy program initiated in that era: Is this fraud, or is it ... just confusion? K & R Limited Partnership says it is the former, alleging that during the last 15 years, MassHousing [FN1] has knowingly submitted excessive claims for subsidy payments to the federal government. The district court granted summary judgment for MassHousing, *United States ex rel. K & R Ltd. P'ship v. Mass. Hous. Fin. Agency,* 456 F.Supp.2d 46 (D.D.C.2006), and we affirm because there is no genuine issue as to whether MassHousing knew its claims were false.

> FN1. Its formal name is Massachusetts Housing Financing Agency.

Under § 236 of the National Housing Act, the U.S. Department of Housing and Urban Development (HUD), subsidizes mortgage payments for owners of low-income rental housing. 12 U.S.C. § 1715z-1(a). The owner makes monthly payments to its lender as if the yearly interest rate was 1%, and the lender applies to HUD for the difference. *Id.* § 1715z-1(c). MassHousing, which is such a lender, sells tax-exempt bonds to investors and uses the proceeds to finance housing projects as part of its public mission to support affordable housing for low- and moderate-income Massachusetts residents.

In 1993, MassHousing used proceeds from new bonds to "refund" (i.e. redeem or retire) mostly higher interest bonds it used to finance loans, including loans for which MassHousing received interest reduction payments from HUD under § 236. Although MassHousing reaped substantial savings on its debt service, it did not pass along those savings to HUD by reducing its claims for payments. That is the

nub of this case.

In relevant part, the **False Claims Act** (FCA), 31 U.S.C. §§ 3729-3731, imposes liability on "[a]ny person who" "knowingly presents" "a false or fraudulent claim for payment or approval" "to an officer or employee of the United States Government," *id.* § 3729(a)(1). MassHousing concedes it is a "person who" presented "claim[s] for payment" to HUD employees. It denies those claims were "false or fraudulent," but agrees that depends on the correct interpretation of the mortgage notes for the loans at issue. On each claim, MassHousing's representative "certifie[d] to the best of his knowledge and belief" that "each interest reduction payment ... ha[d] been calculated in accordance with" the applicable agreement. J.A. 122. Such agreements required that the "interest reduction payments" reflect the owners' interest rates on their permanent loans-rates the mortgage notes established. Thus, if the mortgage notes varied the interest rate with MassHousing's **\*982** debt service, then MassHousing has been over-billing HUD on those loans since 1993. K & R's 2003 estimate of the running total was $28 million, making MassHousing's potential liability around an eye-popping $100 million, *see* 31 U.S.C. §§ 3729(a), 3730(d) (authorizing civil fines, treble damages and, for *qui tam* plaintiffs, expenses including attorneys' fees).

Over the years, MassHousing used several types of notes when financing § 236 housing projects. Each type phrased the payment calculation differently and somewhat awkwardly. Thus, the parties and the district court have spilt much ink in explaining the meaning of these notes, each parsing different language supporting its own "unambiguous" interpretation. K & R insists the notes clearly *vary* the interest rate, while MassHousing, with which the district court agreed, maintains that the notes plainly *fixed* the interest rate once MassHous-

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

ing financed the loans with long-term bonds. The district court also found that even if unclear, other evidence of the intended meaning is so one-sided no reasonable person could conclude otherwise.

We disagree with the parties and the district court that the mortgage notes are unambiguous. Notes from the '70s calculate mortgage payments using "the net interest cost which [MassHousing] is required to pay from time to time on *bonds to fund or refund the loan.*" *E.g.,* J.A. 253 (emphasis added). Those notes also provide "if the rate of interest ... shall change from time to time as provided above, the amount of such monthly payments shall be adjusted upward or downward, as the case may be." *E.g.,* J.A. 200. [FN2] While the parties agree the trigger for changing the interest rate is when Mass-Housing "refund [s] the loan," they are at a stalemate over the meaning of this phrase.

> FN2. The most recent mortgage notes merely state the monthly mortgage payments or calculate payments using a specific interest rate. K & R's claims do not rely on these mortgage notes.

K & R claims the 1993 bond refund was a loan refund that lowered MassHousing's "net interest costs," requiring MassHousing to reduce mortgage payments. But in MassHousing's view, a bond refund is different from a loan refund. A loan refund supposedly occurs not when MassHousing redeems bonds it used to finance the loans, but when it *designates* bonds to "refund the loan" and recalculates the owner's payments accordingly. Here, MassHousing did not designate the 1993 bonds to refund any of the loans at issue, nor did it recalculate any mortgage payments.

K & R questions the distinction because during a project's construction MassHousing temporarily "fund[ed] and refund[ed] the loan[s]" with short-term bonds it paid periodically with the proceeds from new short-term bonds. In that way, the new bonds "refund[ed] the loan[s]." Similarly, using proceeds from the 1993 bonds, MassHousing redeemed the long-term bonds with which it "fund[ed] ... the loans." K & R concludes the 1993 bonds must "refund the loan" like the short-term bonds. But the similarity of these transactions does not undermine the distinction since MassHousing designated which short-term bonds refunded the loans, and did not so designate the 1993 bonds.

Next, K & R argues that MassHousing's interpretation makes nonsense of the payment calculation. Because Mass-Housing refunded the bonds it used to finance the loans, those bonds no longer exist. Therefore, MassHousing's "net interest cost" on them is zero, resulting in payments with no interest component. That can't be correct, says K & R, so MassHousing's interpretation must be wrong. However, **\*983** Mass-Housing claims to have "fund[ed] ... the loan[s]" only once and so the payment calculation applied one time only. Mass-Housing takes the same position on mortgage notes from the '80s and '90s, which calculate payments using the "interest cost incurred by [MassHousing] on the Funding Bonds"--"bonds issued by [MassHousing] and *designated by it* to fund" a loan. J.A. 247-48 (emphasis added).

Last, K & R says its interpretation is correct because MassHousing added the phrase "from time to time" so Mass-Housing could change the mortgage interest rate after a bond refund. We find K & R's evidence on this point unclear. It offers a mortgage note that does not use the phrase, and which predates the resolution authorizing the bonds MassHousing used to finance the loans at issue. The resolution allowed MassHousing to refund the bonds, but required MassHousing to ensure existing mortgage payments were sufficient to pay the new bonds it issued. According to K & R, the phrase "from

time to time" allowed MassHousing to meet this requirement by changing the mortgage interest rates. However, MassHousing claims it would only undertake a bond refund in circumstances when mortgage payments would always be sufficient, i.e. when market interest rates are lower than its current debt service. Thus, MassHousing says it did not add the phrase to meet the requirement.

[1] On the evidence here, both MassHousing's and K & R's interpretations are plausible. We need not decide which has the better reading, however, because the FCA requires that defendants make false claims "knowingly" by (1) having actual knowledge, (2) acting in deliberate ignorance, or (3) acting in reckless disregard. *See* 31 U.S.C. § 3729(b). To successfully oppose summary judgment, K & R must show that a reasonable factfinder, drawing all "justifiable inferences" from the evidence in K & R's favor, *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986), could find MassHousing at least recklessly disregarded the falsity of its claims. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) ("after adequate time for discovery and upon motion," courts must enter summary judgment "against a party who fails to make a showing sufficient to establish ... an element essential to that party's case, and on which that party will bear the burden of proof at trial"). After our *de novo* review of the record, *see Wilson v. CARCO Group, Inc.,* 518 F.3d 40, 41 (D.C.Cir.2008), we conclude K & R did not make this minimum showing.

[2][3] Reckless disregard under the FCA is "an extreme version of ordinary negligence." *United States v. Krizek,* 111 F.3d 934, 942 (D.C.Cir.1997). To show MassHousing was reckless as to the falsity of its claims, K & R points initially to MassHousing's disregard of the "plain language" of the mortgage notes.

However, as we discussed, these notes are not "plain," especially the key phrase, "refund the loan." K & R never explains why MassHousing's interpretation of the mortgage notes was unreasonable, much less why its interpretation constituted reckless disregard. While the unreasonableness of MassHousing's interpretation is merely evidence, the absence of which does not preclude a finding of knowledge, *see United States ex rel. Oliver v. Parsons Co.,* 195 F.3d 457, 464 (9th Cir.1999) (amended opinion), K & R points to nothing else "that might have warned [MassHousing] away from the view it took," *Safeco Ins. Co. of Am. v. Burr,* --- U.S. ----, 127 S.Ct. 2201, 2216, 167 L.Ed.2d 1045 (2007).

Thus, contrary to K & R's assertion, MassHousing's failure to obtain a legal opinion or prior HUD approval cannot **\*984** support a finding of recklessness without evidence of anything that might have given it reasons to do so. In fact, the evidence suggests there were no reasons. MassHousing made no secret of the 1993 bond refund and during a HUD audit the next year, MassHousing specifically brought the 1993 refund to HUD's attention, albeit for a somewhat different issue. *Cf. United States ex rel. Totten v. Bombardier Corp.,* 380 F.3d 488, 496 (D.C.Cir.2004) ("if the claimant has told the [government official] pertinent facts that would, in the absence of such disclosure, make a claim fraudulent, it seems that the claimant has not 'knowingly' presented a false claim"). There is no evidence HUD expressed any concerns and, in fact, HUD continued (and continues) to pay MassHousing even after K & R filed this lawsuit. Although the fact the government continues to pay claims might not preclude a finding of knowledge, here that fact at least suggests MassHousing did not act with reckless disregard.

Against all this, K & R merely urges its different reading of the notes, which here falls far short

of showing a genuine issue as to whether MassHousing knew its claims were false.

Finally, K & R's evidence of MassHousing's motive to submit false claims--the need to bail itself out of financial trouble--could not in this case support a finding of knowledge, be it actual, deliberate ignorance, or reckless disregard. For its part, MassHousing freely admits it undertook the 1993 bond refund to lower its debt service and receive the same amount of HUD payments. But its eagerness to do so does not mean MassHousing knew it did so unlawfully.

At bottom, K & R and MassHousing simply disagree about how to interpret ambiguous contract language. Given that and K & R's inability to point to anything "that might have warned [MassHousing] away from the view it took," *Safeco,* 127 S.Ct. at 2216, there is no genuine issue as to whether MassHousing knowingly presented false claims to HUD. We therefore affirm the judgment of the district court. [FN3]

> FN3. We also affirm portions of two discovery orders from which K & R appeals, and we dismiss MassHousing's motion to supplement the appendix. The district court did not abuse its discretion in denying K & R's discovery requests. *See Diamond Ventures, LLC v. Barreto,* 452 F.3d 892, 898 (D.C.Cir.2006). In addition, we did not need the materials MassHousing proposed to add to the appendix; therefore, its motion to supplement is moot.

*So ordered.*

530 F.3d 980

END OF DOCUMENT

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.